The next case for this morning is Widger v. State Farm Fire & Casualty Co. Before I call counsel, I want to restate for the record that Justice Cates is also participating in this matter. She is not available to be here this morning, but she is a fully participant. She will present justice on the panel and will hear the oral arguments as they are reported, and have the opportunity to review the briefs and the record. So you may proceed, counsel, for the attorney. Thank you, Your Honor. May it please the Court, counsel. My name is Mike Videsky, and I'm representing State Farm in this matter. It's a pretty basic, hopefully simple, case, Judge. Basically, it deals with the enforcement of an insurance policy, a homeowner's policy that State Farm issued to the witchers. There was a fire loss, and there was a claim made for the damage to the home. There was a dispute between State Farm and the insurers as to how much damage occurred, what the claim was worth. So the State Farm policy, like many homeowner's policies, contains an appraisal clause. In order to resolve the claim, the parties agree that they will select appraisers. If the appraisers disagree, they can select an umpire. If they can't select an umpire, either party can ask a judge in a court of record to select the umpire. So what happens here, well, just to back up a second, so what happens here is when there's a significant dispute like this, as a practical matter, the umpire is really going to decide the value of the claim. And that's really a critical decision, the umpire is the critical person here, because when the two appraisers can't agree, and there's a substantial amount of disagreement between the two, the court's decision on who the judge chooses to be the umpire is really going to decide everything. And again, this is the enforcement of a contract both parties agree to, the insurance policy. Usually, Your Honors, frankly it's not a big deal. Either State Farm or the insured goes ahead and files a petition, a case is filed, and then counsel or the individuals or State Farm gets a hold of each other, people show up in court, they can make their pitch, they have an agreed upon date, it's not a problem, and a judge decides who they're going to choose to be the umpire in the case. Typically what we do is State Farm will have a list of potential umpires, the insured will have a list of potential umpires, the court can choose from either list, or the court can choose someone else. Again, usually it's not a big deal. But the selection of the umpire is a big deal because again, that person's going to decide the claim. And that's a final decision, and there's no appeal of the decision of the umpire and one of the appraisers. It's going to be one side or the other. But what happened here was a little bit different, very different. This is basically a race to the courthouse. What happened was on April 27 of 2016, the insureds filed a petition for appointment of the appraisal umpire in Madison County. The same day, the same day, the judge entered an order appointing Dale Peek as the umpire in the case. And Mr. Peek was one of the nominees of the insureds. This was done with no notice to State Farm, State Farm was not served. This was a one-day thing, walk it right through, bang, it's filed. The judge enters an order binding on State Farm of the selection of the umpire. No participation with State Farm at all. So we file on May 4, State Farm finally gets notice of what's going on. We file a reply to the petition for the umpire. We request to allow State Farm's input into the court's decision of a list of candidates. We found out about the petition being filed. We had no idea about the order. And you'll see at seat 24, we ask for State Farm's input, just like what we routinely do in these situations. Later on, we find out, whoa, the order's already entered, we got a problem here. We file a motion to vacate the order appointing the umpire. And we ask, please, can we be heard on who the court selects to be the umpire? The order's already entered, binding on State Farm. Well, what happens next? Well, the appraisal moves forward. The appraiser, Mr. Peek and Mr. Adkerson, selected by the witchers, they do their appraisal May 26. They come up with the value, which was the insured's value, which differs from State Farm by about $88,000. Appraisal award is completed over our objection. As you can see, Judge, what's happened here, because of this ex parte activity, the ex parte order being entered, umpire is selected, umpire and their appraiser get together. They have the award, and now we have this situation where we object, but the court confirmed the appraisal award. And that's, again, all of this happens ex parte. So, our argument is pretty simple. Like I said, I think it's a fairly simple case, I would hope. Due process applies here. State Farm was denied due process of law through this ex parte activity. Again, what we're doing is, this is the enforcement of a contract by the court on a party to the contract, State Farm. On one side, the insured's on the other. The court enters an order, and that's binding on State Farm. But, there was no notice and no opportunity to be heard. Like I said earlier in the process, typically, in a typical case, things are worked out. Somebody files a petition, a phone call is made, can we go over there, we got a judge assigned, let's go ahead and have the umpire decided by the court. Now, your honors, the court can decide whatever umpire they want. If the court wanted to decide and choose Dale Peak, the court could have decided Dale Peak. But, all we're saying is, we have a right to be there at the hearing, and have a hearing, and have a presentation. Some of these selected umpires may be more objective than others. I'm not casting dispersion on anybody in particular, but some people are more qualified than others. The judge is going to make a decision. The insured's have a list, State Farm has a list. We say that we don't like this person for that reason, they say they don't like our person for this other reason. Somebody's biased here, they're not biased over there. Sometimes we can agree. We have a name which sometimes we can agree on. Again, typically, it's not a big deal. But, what I'm trying to say here, though, is because the power of the court is used and invoked, and the court enters an order that is binding, and is enforcing a contract, we are entitled to due process. We're entitled to show up at the hearing where the court determines who the umpire's going to be. That was denied us here. We didn't have any opportunity. Was all this objection to the umpire made after the $88,000 difference or before? We objected as soon as we found out about the order. We filed our objection before any result was made. Yeah, May 9, 2016. They entered their appraisal award on May 26. So, just the timeline. April 27, 2016, they filed the petition for appointment of the appraisal umpire. That's at C8. The order, same day, April 27. That's at C3 in the record. We filed our reply to the petition for umpire on May 4. That's at C24. Our motion to vacate the order appointing the appraisal umpire was filed on May 9. And that's at C27. And you can see, like I said, it's a simple case. There's not a lot of reading, hopefully. You can see what we tried to do here. Anyway, you know, the state farm policy does not say, well, the first person that gets to the courthouse wins. Or the first person that gets there gets to submit their exclusive list of umpire candidates to the judge. Or the first person that gets there, you know, gets to persuade the court. It doesn't say that at all. It just says either party may petition a court to select an umpire, okay? There's no waiver of due process. There's no whoever gets there first wins. There's none of that kind of thing. Because, again, any time, you know, the parties agree on the policy, any time you're using the court to enter an order, that triggers due process. No one waives the right to be heard when you're enforcing a contract. And it's just, well, like I said, it's a very unusual situation here, Your Honors. So the other argument that we're making is the court's order appointing the umpire here is void. It's void because there is no service on State Farm. When this was done, it would have been impossible to serve State Farm because it was done probably within minutes of when he goes over to the clerk's office, files the thing, run upstairs, Judge Barbera signs off on it. No service at all at State Farm. And now we have an order entered with no service, no notice. Did State Farm file a motion to vacate? Yeah. Motion to vacate the order regarding the appraisal umpire was filed May 9, 2016, when we first found out about it. That's at C-27. And then later on, the appraisal award was entered on May 26. I apologize, I don't have the citation to it. But, again, the record's pretty small here. But we filed that right away. And this was filed before the court entered the order later on confirming the appraisal award. This is very similar to an arbitration situation. So what you're saying is the court had no jurisdiction to enter the award. Right. Because the order appointing the umpire was void, it's like as if it didn't exist. So the court didn't have jurisdiction. I'm sorry. By contract, you gave them that right. What's the policy say? The policy says all it says is either party can petition to have a court of record appoint the umpire. And one party did. One party did. How did they lose jurisdiction? Well, if a court's going to enter an order that's going to be binding on somebody, because they filed an action in court, one party's entitled to notice that there's a legal proceeding brought because it's filed in the courthouse and now we have a legal action going on. A party is entitled to be served and to have notice. And if they don't have notice and they're not served and some order is entered without any opportunity, that's void. That's cited two cases. That's not in the contract. No, it's not in the contract, but we have the Constitution, the only Constitution, and every contract that incorporates cited cases incorporates the existing law. Well, the existing law is the only Constitution that has due process. Do you know what the due process law is? It says it has no jurisdiction, so therefore it's void. That's what I'm trying to get at. Where are we looking? Well, I cited some cases here that I had trouble finding stuff similar to this. There's workers' comp cases where the employer isn't served and there's an order entered on an award and they're saying it's void because they were never served. But that's an initial service. Here we don't have that problem, right? Well, we've got a big problem because the order was entered appointing the umpire, okay, without any participation or notice or service on State Farm. The train left the station. The umpire selected. It's their umpire on their list. That you filed a motion to vacate. Oh, yeah. And then State Farm did appear and argued the motion to vacate. Yes. And wasn't there a full hearing on the motion to vacate? Did State Farm get an opportunity to present it to our judge and present its proposed umpire list? No, absolutely not. We were not allowed to do that. We couldn't present a list because the judge entered the order and he wasn't going to vacate the order. It was not. On the motion to vacate, the only consideration was whether to vacate. There was no consideration on State Farm's list. That's correct. We never got an opportunity to ever make that argument. That's correct. Did you file a pleading asking for that? I filed a pleading. Yes. Yes, absolutely. That was the motion to vacate the order regarding the appraisal umpire. That's at seat 27. That's what I asked as part of the relief we asked. To vacate it and then please allow us to have a hearing. Please allow a hearing on the selection. That was part of the relief. Let me give you a hypothetical. Let's say he had heard your motion and considered your arguments and went ahead and appointed the same umpire. You would not have an argument for jurisdiction. No, and I wouldn't be here today. All we're asking, Judge, is to have the hearing. Again, like I said, the judge can appoint whoever they want to appoint. All we're asking for is, instead of an ex parte thing, to have a hearing so we can say we object to them for that reason, they object to them for this reason. If he wants to still appoint Peek, he can certainly do that. Absolutely. But we never had any hearing. We could never object to that person. That's all we're saying. Yeah, I mean, there's no parameters on who the judge could select. Somebody that neither side offered. But the custom and practice is, you know, typically we kind of go back and forth. They'll have a list and the judge will pick one or the other. Sometimes we can agree. But the point is we have a hearing. We get together with the judge to do this. We just didn't have that here. We were denied that opportunity to do that here. On the issue of jurisdiction, we didn't file our appearance until May 4th. Okay? But the order appointing the umpire was April 27th. So we have the order entered appointing the umpire. We don't appear until after that's already done. So, again, there is no jurisdiction over State Farm when the train left the station. The umpire is appointed. Away they go. And they very quickly did their appraisal, too. I didn't see one in the court record. I don't think so. I don't know what he did. I don't know. You'll have to ask Mr. Daniel. There's an argument. They argue, well, this whole thing is supposed to be expedited. You know, State Farm, you didn't do this one a certain amount of time. You didn't do that one a certain amount of time. So, you know, you've basically given up your right to appear, given up your due process rights. There was never any breach of contract, material breach of contract alleged, or some kind of vexatious refusal alleged at all. This is a unilateral decision on the part of the insurance to just go ahead and do this. If they're going to argue that, well, somehow State Farm forfeited their right to participate in a hearing to select the arbitrator or to select the umpire, again, that's a decision for the court. If the court, if they want to argue that, that's fine, but the court would have to decide that and we would have to be present to argue against it. That's what I'm trying to say here. We never got to be present to argue against any of these things. And that wasn't even, the whole point of this, Judge, is it is supposed to be an expedited process. We try to work things out. We try to move forward with these things. It was just a one, two, three without any input at all. I think the question that we're trying to find out, how did you get to the trial court? Why are you there? Somebody's got to be like, as Judge said, they're asking, was there a summons? Did somebody file a lawsuit against State Farm? Yeah, it was a petition. Did somebody file an action against State Farm? So you answered that or you didn't answer that? We filed a response, yeah. We filed an answer to a petition to appoint Judicial Empire. Yeah. I'm sorry if I didn't answer your question. I wasn't understanding you. They filed a petition for appointment of Judicial Empire. It was a legal proceeding in court. And you got served. I don't believe we actually got served. We were made aware of it. Apparently, Mr. Daniels. You entered your appearance. I did enter my appearance after the order. There's jurisdiction over something. That's what we're trying to get at. Oh, yeah. But it was, right. I entered my appearance after that order was entered that appointed the umpire. Do you understand what happened here or no? No, I understand. All right. I'm sorry. You're saying void, so that means no jurisdiction. That's the only thing I can think of. Yeah. Is it void or is it void of both? I don't know. Well, what I tried to say was what was void was the order that was entered appointing the umpire. So he didn't have jurisdiction at that time. Yes. That's correct. And he didn't have jurisdiction because? No service on State Farm, no notice to State Farm. That's in the contract. Really great. What's in the contract? That you have to have service on State Farm. That's not in the contract, but that's like I cited those cases where if a proceeding is brought in court and someone is sued, like they are here, that there is requirement for service on the person because this whole sort of due process idea applies when you're invoking the power of the court. It's like filing a declaratory judgment action. Well, the court's going to be involved to determine, like we just had the stacking case over here. Well, you've got to get service on the insurance company. They have a right to be heard on whether there's going to be stacking, for example, because the court's going to interpret the contract. Here, the court is going to decide who the umpire is going to be. And that was done ex parte. Thank you. Thank you, Counsel. Oh. Good morning. Good morning. I'm William Stanley Daniel. I represent Mr. and Mrs. Ronald Witcher. We are the Appellees. We seek affirmance of Judge Barbera's rulings. Justice Moore, thank you for presiding. Justice Welch, thank you for your participation. Justice Cates, thank you for your participation by other means. Your Honor, as the result of affirming the circuit court decision in this case is simply to uphold literally centuries of precedence in Illinois First Party Insurance appraisal law. Not arbitration, not work comp, appraisal, which is a distinct area of our law. The consequences of reversal of the circuit court's rulings would be to upend and cast aside those centuries of Illinois appraisal law by stripping the law of its required certainty, predictability, and reliability. There's no authority for State Farm's position taken in this case. It's after the fact, after April 27 pleadings were just delay tactics. This was done. No summons was requested. No summons was issued. No summons is served because the appraisal clause does not provide for that. This was done on a routine, everyday walkthrough. File, I'm sorry, file the petition if a judge is available. And in Madison County at that time it was Judge Barberis assigned to the MR docket. He was the equity judge. That's to whom the clerk sent me. The matter was presented to Judge Barberis and he ruled in equity on an MR case based on the record that was made. And from the list of eight nominees for appraisal umpire, he selected number three of the eight. Dale Peak, who was the only one who had listed as both appraiser and appraisal umpire past experience. It appeared to me that Judge Barberis chose the most experienced person as the umpire. And that's how it was done. That's how it's always done. I want to point out that at no time ever has State Farm filed a matter, had summons issued, had summons served, gone through this whole elaborate thing it seeks to now impose after the fact. State Farm has never employed the procedure it seeks to harness on the witchers. Do you agree with counsel's factual statements about what had happened at the time the order was entered that there had been no service and no notice to State Farm? No service is correct because none is required. Not by the Illinois Department of Insurance, not by the appraisal clause of the insurance policy contract. Notice, however, and the case law talks about some reasonable notice, on March 18th, Mr. and Mrs. Witchers, public adjuster, sent a letter to State Farm's adjuster demanding appraisal, quoting the appraisal clause, which has nothing about this elaborate after the fact procedure of summons and service and motions and hearings and trials and all that. It's not part of appraisal law. Do you have any cases that say that some summons is necessary? No, the case law that's cited in our brief says that service of summons is not required. And in fact, there's the 1931 Glidden case from the U.S. Supreme Court that talks about these procedures, how constitutional due process is not violated, not infringed, not involved in an appraisal situation. Court retains jurisdiction for questions of liability or coverage, but appraisal is a distinct animal designed to quickly and expeditiously set the amount of loss. That's all it does. Now, we have the situation where jurisdiction, I'll address two points. One is already conferred by the appraisal clause itself. Either you or we may ask a judge, ask a judge, to select and appoint the appraisal umpire. It does not say you and we. It says you or we. They could have gone. We went. They did not. We followed exactly what the appraisal clause provides. Also, jurisdiction is preauthorized or conferred by Illinois statutes. State Farm, the world's largest insurance company headquartered in Bloomington, Illinois, is organized under Illinois law. It's an Illinois corporation. It does business in Illinois, and specifically, it does insurance business in Illinois. Any of those four acts, and in this case, all four of them constitute jurisdiction. That constitutes a basis for jurisdiction, but without the service of someone, there's no personal jurisdiction. It's not required in appraisal. No cases ever, no U.S. Supreme Court case, Seventh Circuit, Illinois, Springfield, Fifth District, Circuit Court, there's not one decision that says this elaborate after-the-fact procedure of summons and complaint, I mean, that's for an L case. This is an MR case in equity. These are walked through routinely every day. State Farm has never employed the procedure. It suggests that Mr. and Mrs. Witcher should have done, and if it had, surely it would cite that to the court. It has cited nothing to the court because it doesn't exist. It has never existed. It's not the law now and should not be made the law. There was talk of this list. We submitted a list of eight. There's case law cited in our brief where the usual is three. We submitted a list of eight. State Farm had the same, equal, even playing field opportunity after 20 days to name an appraiser, where they did not name their appraiser, refused to name their appraiser. They had the same 15 days after that to agree on an umpire. They did not and could not agree on an umpire because they barred Stephen Ricker, their appraiser, from participating. And so State Farm defaulted in all these things, and then Judge Barbera selected one of the eight, number three on our list of eight, but State Farm oddly never submitted any list to the Madison County Circuit Judge. When State Farm filed its May 9, 2016, motion to vacate the order appointing appraisal umpire, it did not submit any list. Second of five opportunities, when it argued its motion on May 27, 2016, it did not provide any list of umpire or alternate umpire candidates. Third of five, when it filed its July 20, 2016, objection to the Witcher petitioner's petition to confirm appraisal award, still no list. At no time during the September 16 oral arguments on the petition to confirm the award, State Farm's list was never tendered to the court. State Farm had no attorney appearing and representing it until May 4, when it filed its respondent's reply to petition for judicial appointment of umpire. That's at 823 of State Farm's own appendix. Again, with no list of umpire candidates. It had five opportunities after the court had ruled appropriately to submit a list, and on none of those five occasions, or to date, has State Farm ever said, well, we nominate these guys. They could have gone in before we went in, but they did not. We went in after the time had elapsed, and we went forward as the policy ordains and provides where either you or we may ask a court to select the appraisal umpire. And we scrupulously followed the policy, and State Farm boycotted its own appraisal. It refused to have its appraiser involved until it was too late. On May 9, 2016, which is 836 of our appendix, State Farm declined our invitation to participate in the appraisal process with your selected umpire, meaning Mr. Peek, who was selected by Judge Barbera. That was a court order. That was not an invitation. On May 20, 2016, State Farm stated, State Farm will not be participating in any appraisal with this man, unquote, Dale F. Peek. In the same letter, State Farm said, quote, to reiterate, State Farm will not be participating in the appraisal process with your selected umpire. In its opening brief, State Farm posited a hypothetical query. What if the shoe was on the other foot? Well, if State Farm had gone to a judge after 20 days, if it had named its appraiser, which it refused to do, if the 15 days for the two appraisers to select their umpire had lapsed, State Farm could have gone in and had any judge in the equity division on a miscellaneous remedy case appoint the umpire. State Farm did not avail itself of its opportunity. Mr. and Mrs. Witcher did. I went to Judge Barbera, who read every page and word of the petition, read every page and word of the proposed order. He filled in the name Dale F. Peek from the list at A-19 of our appendix, number three of eight. He filled in that name. That was the court's selection. And then the appraisal went forward from that point. Judge Barbera considered all these matters, and he denied the motion to vacate Dale Peek as the appraisal umpire, and he denied State Farm's petition to object to the appraisal award. Judge Barbera has confirmed the appraisal award. And the policy says written agreement by any two of these three shall set the amount of loss. Well, the appraisal umpire and one of the appraisers, those two of the three, and there really wasn't a three because State Farm told its guy not to participate. They set the award. The award has been entered as a judgment of the court. It set the amount, and that amount stands subject to review here in this court. So the constitutional due process argument has been settled since 1931 in the Glidden case where none of these elaborate after-the-fact procedures are required at all because this is appraisal. It actually does a disservice to lump together arbitration, work comp, with appraisal. Appraisal is very limited. It sets the amount of loss. That's all it does, and it's meant to achieve a plain, simple expedited procedure to do only that. It does not divest the courts of jurisdiction on coverage or liability or anything else. Appraisal is time-honored. I cited the current case law, which is from 1888, 1886, 1931, because that law has not changed, nor has that law been sought to be changed until State Farm's appeal in this one particular case. The two-to-nothing decision instead of, say, two-to-one or even three-to-nothing, as sometimes occurs, is attributable to State Farm's nonparticipation, its boycott, its default in this particular appraisal. The circuit court, in its findings, held that the witcher insureds met the conditions of the party's contractual agreement and Dale Peek should remain the appraisal umpire as he was. He entered with one of the other appraisers his award, and that stands. Notice to State Farm's claim agents is notice to State Farm. And there was more than the one notice of March 18, 2016, invoking the appraisal procedure. There was the follow-up of April 8, 2016, saying the witchers are proceeding with the appraisal. Adjustment was over. This was put in appraisal, and that's where it stayed, and that's what should be affirmed here. State Farm boycotting the ongoing appraisal process and refusing to participate, it did so at its own peril. This cold midwinter fire back in February of 2015, more than two-and-a-half years ago, going on three years next February, where my client's house burned to the ground, State Farm's appendix A-15, the witcher's supplementary appendix A-17 and A-51 is a photograph of the fire scene. It is rubble and debris and ash. It was a total loss. It was a 100% total loss. The only issue is what's the amount of damage. The parties were somewhat apart. Appraisal was invoked. Appraisal happened. Appraisal is done since December 2 of 2016, when Judge Barberis entered his order confirming the appraisal award. So we ask that the Circuit Court of Madison County be affirmed in its two decisions. It denied State Farms after the motion to vacate the appraisal award, and it confirmed, I'm sorry, vacate the appointment of Dale Peek as the appraisal umpire. That was denied in the Circuit Court. The objection to the appraisal award was also denied in the Circuit Court because, as the Circuit Court judge at that time found, the parties' contractual agreement was met. It was adhered to. And when State Farm says, here's our policy. It's a contract of adhesion. It's to be strictly construed against State Farm. It's to be construed liberally in favor of the insured. It has an appraisal clause, which spells out a relatively straightforward procedure, which my clients followed to the letter, which State Farm did not follow at all. It should stand, and the decision should be affirmed. I'd be happy to answer any questions either justice has. Thank you, Counsel. Thank you, Justice Moore. Appreciate it. Reply. I have to take a second here. Thank you very much. It was too far. Thanks. Appreciate it. Thank you, Your Honors. Judge, if this Court affirms the decision of the trial court, what this Court will be affirming is a race to the courthouse to select an umpire with no notice to a party to an insurance contract. I'm not sure the Court really wants to. I'm not familiar. Has this ever been used before in Madison County? Yeah, we use it all the time. This is routine. Oh, yeah. We file it in court because to get a – we just can't call up a judge. We file a proceeding in Madison County or St. Clair. We get together with the opposing counsel or the insurance and say, we're going to have – the judge is going to decide the umpire. We find a date. We get a date. So it's expedited. And we go over there. In other words, you're assuming that you won't accept any plaintiff's appraisal. Typically, it's quite a partisan situation, yes, yes. So we have a list. They have a list. We get together and we have a little hearing with the judge, and the judge makes a decision. We do this all the time. A little different in this situation, but like I was saying before, by affirming the trial court, you're telling State Farm, if we go down the road of appraisal, you better get over to the courthouse real quick. Do it on your own. Don't tell the insurance. Don't tell the insurance lawyer. Whoever's ever fastest wins. You had no knowledge that they even filed anything. That's absolutely true. In other words, did you get any notice from your agent that they received a letter? No. Did the agent deny that they ever received a letter? I think he said in his oral argument that the agent was given a letter. What he said was there was a letter drafted to the agent or the adjuster demanding appraisal. Well, that's different than we're filing the petition in the court. The appraisal says first. Did that appraiser ever notify you that he got a letter? Eventually, we got notified that the appraisal. How long was that after they went to court? This was long after they went to court that we were even awarded. Is there a date on the letter or mail set or anything? They want the appraisal process to start the appraisal process on March 18. I think it's the date of the letter. March 18? What date did the judge enter the order? May something, wasn't it? The judge entered the order April 27. But the appraisal process in this order, by the way, the letter we're talking about is at C-16. That starts the appraisal process. The end of the… What's the letter say? It says, as much as we are unable to agree the amount of loss to the dwelling, the insured is hereby demanding an appraisal. And then they quote the section of the policy, and I won't read it to you. The insured hereby names Joel Adkerson as the appraiser, as his phone number. Please forward your appraiser's information to my office. So they name their appraiser. And if you read the section, which I won't do here, but there's a whole process for the umpire. If the appraisers can get together, select an umpire. If they can't, they can't. And then there's something filed in court. There was no notice to State Farm that they're filing in court. Your agent didn't notify the company. Is that what you're saying? No, the agent, State Farm got the letter. See, I'm having trouble determining who's State Farm and who's the agent. Is the agent State Farm? There was an adjuster, yeah. This letter went to a State Farm adjuster. I thought he was a State Farm adjuster. Where did they get his name, you know? Did State Farm notify him of that name? They were negotiating. They were trying to get the – there was negotiation to try to come up with a figure for the amount of the loss. When did that start? Sometime after the fire. I'm not sure exactly when, Your Honor. So on March 18th, there was no settlement, so they went ahead and sent a letter. That they wanted to go start the appraisal process, right. And State Farm never received that, ever. You're assuming that the agent that he sent the letter to is not a State Farm agent? Is that what you're saying? No, State Farm got the letter. That they wanted to start the appraisal process. That was on the 18th. Of March. But the appraisal process is not the same as – the appraisal process provides time limits and so forth for naming an appraiser. The appraisers get together, try to come up with an umpire. They can't come up with an umpire, they get filed in court. This is way down the line when they actually – if they can't get together, they file something in court. There was no letter, there's no nothing telling State Farm, we're filing it in court today, you better show up. It's going to be like a temporary – an injunction. You better show up because we're going to name a – the judge is going to pick an umpire. I just don't think this court would want to have State Farm race to the courthouse and do this with no notice to the insurance and do an ex parte.